FORET, Judge.
Plaintiff, Nancy Zimmerman Bean, filed suit seeking an accounting of the mineral royalties payable under oil and gas leases and a declaratory judgment establishing her community property interests in those leases. Made defendants were her former husband, Theo B. Bean, and Baleo Energy Corporation, the operator of those leases. Defendant, Baleo, envoked a concursus proceeding requiring plaintiff and defendant, Theo B. Bean, to assert their respective claims to the mineral royalties. After trial on the merits, the trial court rendered judgment in favor of defendant, Theo B. Bean, rejecting the plaintiffs demand. Plaintiff has appealed and raised the following issues:
(1) Whether the trial court improperly admitted parole evidence with respect to a written property settlement agreement between plaintiff and defendant.
(2) Whether the trial court erred in finding that the intent of the parties as expressed in the agreement was to confer the Louisiana mineral interests on the defendant, Bean, and
(3) Whether the settlement agreement was sufficient in form to transfer ownership of the mineral interests.
FACTS
Plaintiff, Nancy Zimmerman Bean, and defendant, Theo B. Bean, were married in 1950 in the State of Georgia. Throughout their marriage, the couple maintained their marital domicile in that state. During the marriage, Theo acquired interests in various oil and gas leases on properties located in Grant Parish, Louisiana. On October 12, 1979, Nancy and Theo were divorced by judgment rendered in the Superior Court of Fulton County, Georgia. In its divorce judgment, the Georgia court expressly reserved judgment on all other issues pending between the parties, specifically including the distribution of marital property. Prior to a scheduled trial on these issues, the parties entered into a settlement agreement. The Georgia court approved the agreement and incorporated it into its judgment on August 15, 1980.
The settlement agreement conveyed several substantial assets to Nancy and contained the following clause:
10.
“Both parties agree that the provisions of this Agreement constitute a full and final settlement and satisfaction of any and all claims which are presently outstanding between them, including specifi-catlly [sic] all the claims made by the Plaintiff against the Defendant in the above-styled litigation and all claims made by the Defendant against the Plaintiff set forth herein. Plaintiff acknowledges that this Agreement embod *248 ies all of her right and interest in and to the assets and estate of the Defendant and is a full and final settlement against him and his estate with respect to alimony, maintenance and support for herself, including all rights of dower, homestead, year’s support, and other such rights arising out of the marriage relationship which previously existed between the parties, and any and all other claims she may have against him.”
The settlement agreement did not specifically mention the Louisiana mineral interests. More than a year later, Nancy filed the present action seeking an accounting of the mineral royalties paid under the leases and asking for a judgment recognizing and declaring her one-half interest in the leases.
At trial of this matter, the parties testified regarding the negotiations which led up to the settlement agreement. The undisputed facts are that following their divorce, the parties were unable to agree on alimony and the division of marital property. Several weeks before these issues were scheduled to be tried before a jury, Theo suggested through an intermediary that he and Nancy get together to discuss the disputed issues without their attorneys being present. Theo further suggested that Nancy bring along someone to advise her if she felt that this was necessary. Nancy accepted Theo’s suggestions on both accounts. She engaged James Arogeti, a CPA and attorney, to aid her in the negotiations. The parties met with Arogeti on two occasions. An agreement was reached and, based on notes taken by Theo, his attorney drew up a formal settlement agreement. This agreement was signed by Nancy and Theo after it was approved by the attorneys representing them.
PAROLE EVIDENCE
Nancy contends that the trial court erred in allowing the introduction of parole evidence to clarify the meaning of the settlement agreement. Parole evidence is not admissible to negate or vary the contents of an authentic act or an act under private signature. LSA-C.C. Art. 1848. There are circumstances, however, where parole evidence concerning such a writing is permissible. So it is, that parole evidence is admissible to clarify ambiguities in the writing. Standing alone, the settlement agreement was ambiguous. The agreement provides that:
“Both parties agree that the provisions of this Agreement constitute a full and final settlement and satisfaction of any and all claims which are presently outstanding between them, including specifi-eatlly [sic] all the claims made by the Plaintiff against the Defendant in the above-styled litigation and all claims made by the Defendant against the Plaintiff set forth herein.”
(Emphasis ours.)
The settlement agreement does not specify what claims were pending between plaintiff and defendant. In order to determine what claims were pending at the time, we need to look to the judgment of divorce rendered by the Georgia court. In this judgment, the court specifically reserved judgment as to marital property. Whether these claims with regard to marital property included plaintiffs rights in community property located in Louisiana is not clear. Parole evidence was admissible to clarify this ambiguity in the settlement agreement, and the trial court properly allowed parole evidence for that purpose.
INTENT OF THE PARTIES AS EXPRESSED IN THE SETTLEMENT AGREEMENT
The trial court found that the intent of the parties as expressed in the settlement agreement was to settle all claims, including those involving marital property located in Louisiana and subject to Louisiana’s community of acquets and gains. This finding of the court is supported by the record.
Theo testified, and Nancy’s representative at the negotiations, James Arogeti, admitted, that the Louisiana mineral interests were discussed during the negotiations. Theo testified that he offered the *249 mineral interests to Nancy as part of a settlement, but that the offer was rejected since Nancy was interested in receiving cash. Mr. Arogeti testified that at the time of negotiations the mineral interests did not seem to be producing substantial income. Whatever the reasons, Mr. Arogeti rejected Theo’s offer of the mineral interests. At the time that the settlement agreement was negotiated, it seems that Theo was not aware that Nancy owned one-half of the Louisiana mineral interests due to Louisiana community property law. Although Nancy claims that she was aware of Louisiana community property law at the time of negotiations and never intended to give up her one-half ownership of the mineral interests, it is undisputed that she never asserted any such rights during the negotiations. In her testimony, Nancy maintained that the mineral interests were never discussed during the negotiations; but this testimony was directly contradicted by her representative at the negotiations, James Arogeti.
As we have already pointed out, in the settlement agreement Nancy expressly settled all claims which were pending between her and Theo. These claims included the distribution of marital property. The absolute character of the settlement agreement as expressed in its terms was bolstered by the testimony of those involved in the negotiations which led up to the confection of the agreement. The trial court’s conclusion that Nancy relinquished all rights to the Louisiana mineral interests by virtue of the settlement agreement is correct.
SUFFICIENCY OF THE SETTLEMENT AGREEMENT TO TRANSFER LOUISIANA MINERAL INTERESTS
Nancy contends that the language of the settlement agreement was insufficient to divest her of her one-half ownership of the Louisiana mineral interests. Specifically, she argues that the settlement agreement was insufficient to transfer ownership because it neither mentioned nor specifically described the property involved. We do not agree.
As interpreted by the trial court, the settlement agreement settled all claims pending between plaintiff and defendant, including claims to community property located in Louisiana. The transfer of immov-ables pursuant to an omnibus description is effective between the parties. Dickerson v. Scott, 476 So.2d 524 (La.App. 1 Cir.1985); Sandifer v. Sandifer, 389 So.2d 767 (La.App. 3 Cir.1980).
DECREE
For the foregoing reasons, the judgment of the trial court is affirmed. All costs are assessed against plaintiff-appellant, Nancy Zimmerman Bean.
AFFIRMED.